IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PLATO AUGUST SPLAWN, JR.,           §
                                     §
           *Petitioner*,             §
                                     §
v.                                   §           CIVIL ACTION NO. H-17-1041
                                     §
LORIE DAVIS,                         §
                                     §
           *Respondent*.             §

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and life sentence for attempted capital murder of multiple persons. Respondent filed a motion for summary judgment on July 5, 2017 (Docket Entry No. 12), serving petitioner a copy at his address of record that same date. Despite expiration of a reasonable period of 90 days, petitioner has failed to file a response to the motion for summary judgment, and the motion is deemed uncontested.

Having reviewed the motion, the record, the pleadings, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

## I.  BACKGROUND AND CLAIMS

Petitioner pleaded guilty to attempted capital murder of multiple persons in Walker County, Texas, and was sentenced to life incarceration on January 30, 2014. The conviction

was affirmed on appeal, *Splawn v. State*, No. 10–14–00054–CR, 2015 WL 4710251 (Tex. App.—Waco July 30, 2015, no pet.), and petitioner did not seek discretionary review. Petitioner's application for state habeas relief was denied by the Texas Court of Criminal Appeals on January 25, 2017. *Ex parte Splawn*, No. WR-85,237-01 (Tex. Crim. App. 2017).

Petitioner raises the following grounds for federal habeas relief:

1. He was denied due process when the trial court failed to establish that his guilty plea was voluntary;

2. The trial court violated his rights under Article I, §§ 10, 13, and 19 of the Texas Constitution;

3. He received ineffective assistance of trial counsel; and

4. He received ineffective assistance of appellate counsel.

Respondent argues that these claims are without merit and should be dismissed.

## II. FACTUAL BACKGROUND

A detailed recitation of the facts underlying petitioner's criminal offense is unnecessary for disposition of this proceeding. The intermediate state court of appeals succinctly stated the relevant facts as follows:

> [Petitioner] was indicted for the offense of attempted capital murder of multiple persons. The offense stems from an incident where [petitioner] shot his estranged wife, Sandra, and killed his longtime friend and employee, Edwin Garcia, after [petitioner] learned that Sandra and Edwin were having an affair.

*Splawn*, 2015 WL 4710251, *1. Petitioner pleaded guilty to the offense as charged in the indictment, and a jury assessed punishment at life imprisonment.

## III. THE APPLICABLE LEGAL STANDARDS

A. <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court

in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under

28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a

factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v.*

*Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the

presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see*

*also Miller–El*, 537 U.S. at 330–31.

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether

the pleadings, discovery materials, and the summary judgment evidence show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  INVOLUNTARY GUILTY PLEA

Petitioner contends that the trial court failed to establish that his guilty plea was voluntary. Specifically, petitioner argues that his plea was involuntary because (a) it was coerced, and (b) he was mentally incompetent and "on psych medications."

The validity of a guilty plea is a question of law and will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently. *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). When determining whether a plea is voluntary, the court considers all

relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *Id.* Declarations of voluntariness made under oath in open court carry a strong presumption of truth, forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Where there are no improper threats, misrepresentations, unfulfilled promises, or promises of an improper nature, the critical issue in determining whether a plea is voluntary is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Further, a guilty plea is "knowing" if the defendant understood the consequences of his plea, and so long as he understood the length of time he might possibly receive, he was fully aware of the consequences of his plea. *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993); *see also Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) ("The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.").

In rejecting petitioner's claim that his plea was unknowing and involuntary, the state trial court on collateral review made the following relevant findings of fact:

1.     On February 21, 2012, applicant was indicted in this cause for the first degree felony offense of attempted capital murder. Applicant was also indicted in Cause number 25,788 with the first degree felony offense of murder.

2. On January 21, 2014, a jury panel was called. Prior to selection and out of the presence of the panel the court was advised that applicant wished to accept the plea bargain made by the State of Texas. The plea agreement was for applicant to enter a plea of guilty to the indictment charging applicant with attempted capital murder without a punishment recommendation and for the jury to assess punishment. In exchange, the State would dismiss the murder indictment but the circumstances surrounding the murder alleged in cause number 25,788 would be considered by the jury in punishment. Applicant acknowledged to the court that that was his understanding.

3. A jury and alternate were selected and applicant entered his plea of guilty to the first degree felony of attempted capital murder. The punishment hearing was held and afterwards the jury returned a sentence of life in the Texas Department of Criminal Justice-Institutional Division. [Applicant] filed a notice of appeal, trial counsel was allowed to withdraw and an attorney was appointed for applicant to prosecute the appeal. The Tenth Court of Appeals affirmed the conviction.

4. [Trial counsel] was appointed to represent applicant and at the request of [applicant's] counsel, [co-counsel] was appointed as co-counsel. Each of the appointed attorneys had extensive experience in trying criminal cases. Each had served as an elected District Attorney and had extensive experience as criminal defense attorneys. [Trial counsel] was certified in criminal law.

5. Upon entering his plea of guilty, the court admonished applicant and inquired whether applicant understood what he was doing and whether he was competent. Applicant replied that he understood what he was doing and that he was competent.

6. Counsel for applicant was asked whether he believed that applicant was competent to enter his plea and counsel replied in the affirmative.

7. Two psychologists, Dr. [S] and Dr. [B] were appointed at the request of applicant's attorney to assess applicant's competency and any other mental health issues that might be pertinent.

8.      Each attorney was of the opinion that it was "obvious" to each of them that applicant was competent, that he had a clear understanding of the charge against him, the process, the roles of his attorney, the judge, the jury and was able to rationally discuss the events related to the incident.

9.      Neither Dr. [S] nor Dr. [B] felt that there was any evidence to conclude that applicant was incompetent to stand trial or that he was insane at the time of the offense.

10.      Neither attorney was aware of any evidence that would have justified a competency hearing.

11.      The plea offer was 50 years or an open plea to attempted capital murder and dismissal of the murder charge.

12.      Because of applicant's health issues, applicant believed he would die in prison and wanted to either be set free or placed on probation.

13.      There were two eyewitnesses to the incident, [applicant's] wife (who he shot) and the wife of the deceased (who [he also] shot). Additionally, applicant made a videotaped statement admitting to shooting both his wife and the deceased.

14.      Counsel advised applicant that the chances of any acquittal were slim; that if convicted of murder he would not be eligible for probation but a jury could consider probation if [he were] convicted of attempted capital murder. Applicant was further advised that the granting of probation was unlikely. Applicant was also advised of the possibility of deferred adjudication from the judge which they further advised was unlikely.

15.      Applicant chose an open plea to attempted capital murder.

16.      Counsel was of the opinion that applicant made that choice because it was his best chance at probation even though unlikely.

\*      \*      \*      \*

19. Applicant was appropriately advised of the options available to [him] and the consequences that might follow.

20. Applicant entered his plea of guilty knowingly and voluntarily.

21. Applicant was competent to enter his plea.

22. Applicant received the effective assistance of counsel.

*Ex parte Splawn*, pp. 35–39. The state trial court also made the following relevant conclusions of law:

3. A plea must be entered knowingly and voluntarily.

4. A defendant must be competent to enter his plea.

5. A finding that the defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily.

6. After a prima facie showing, applicant had the burden to demonstrate that he did not fully understand the consequences of his pleas such that he suffered harm.

7. Applicant's plea was entered knowingly and voluntarily.

*Ex parte Splawn*, p. 39. The Texas Court of Criminal Appeals expressly relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's bare allegations that he was mentally ill and under the influence of psychiatric medications at the time of the plea are unsupported in the record. The state court record clearly shows that petitioner was examined by mental health experts prior to the plea hearing, and that the experts found petitioner competent to stand trial. Although there was testimony at the punishment hearing that petitioner had been prescribed anti-depressants

and/or anti-anxiety medications prior to, or around the time of, the criminal offense, the expert witnesses did not testify that the medications rendered him unable to make decisions or that they incapacitated his judgment in any manner.

Nor is petitioner's allegation of being promised probation supported in the record. The state trial court found that counsel advised petitioner that his chance of receiving probation was "unlikely." The state trial court further found that petitioner chose an open plea to attempted capital murder as it was his "best chance at probation even though unlikely." Consequently, the state trial court rejected petitioner's claim that counsel had promised him probation if he pleaded guilty.

The state court determined that petitioner's guilty plea was entered knowingly and voluntarily. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## V. STATE CONSTITUTIONAL VIOLATIONS

Petitioner argues that, in addition to unlawfully accepting his guilty plea, the trial court violated Article I, §§ 10, 13, and 19 of the Texas Constitution. These federal habeas claims are grounded in violation of state law and fail to state a cognizable federal habeas claim. A person seeking federal habeas relief must assert the violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas

relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). Because petitioner's claim in this habeas ground asserts violations of state constitutional protections, no federal ground for relief is presented, and habeas relief is unwarranted.

To the extent petitioner claims that the state trial court failed to hold a live evidentiary hearing or comply with certain state habeas provisions, infirmities in state habeas proceedings do not constitute grounds for relief in federal court. *See Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001).

## VI.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner argues that trial counsel were ineffective in the following particulars.

A.    Coerced Plea

Petitioner contends that trial counsel was ineffective in coercing him into pleading guilty by promising he would receive probation. In responding to this claim on state collateral review, trial counsel presented the following testimony by affidavit:

> [Petitioner] was not coerced in any way to plead guilty to any offense. The plea bargain offer was for 50 years. The State also offered to let him plead open to attempted capital murder in exchange for the dismissal of the murder charge.
>
> A major consideration in the decision by [petitioner] was his health. Due to his many health problems he did not expect to survive even a short prison sentence. He wanted to either win the case and remain free or to get probation.
>
> There were two witnesses to the murder, his wife and the wife of the deceased. Further, [petitioner] gave a videotaped statement admitting the shooting of the deceased and his wife who survived. I told [him] that the chances of an acquittal were slim. I told [him] that if he was convicted of murder he would not be eligible for probation but that the jury could consider probation if he was convicted of attempted capital murder.
>
> I told [petitioner] that the trial judge could consider deferred adjudication if he pled guilty to the Court but that I thought it was unlikely for the trial judge to do so. I told [petitioner] that if he accepted the State's offer to plead open to the attempted capital murder charge, it was unlikely that the jury would recommend probation and that it would probably be difficult to pick a jury that could even consider probation. It appeared to me that [petitioner] chose to plead guilty to the attempted capital murder charge because it gave him the best chance to get probation but that he knew that was a very unlikely result.

*Ex parte Splawn*, pp. 7–8.

In rejecting petitioner's claim, the state trial court made the following relevant findings of fact:

4.     [Trial counsel] was appointed to represent applicant and at the request of [applicant's] counsel, [co-counsel] was appointed as co-counsel. Each of the appointed attorneys had extensive experience in trying criminal cases. Each had served as an elected District Attorney and had extensive experience as criminal defense attorneys. [Trial counsel] was certified in criminal law.

5.     Upon entering his plea of guilty, the court admonished applicant and inquired whether applicant understood what he was doing and whether he was competent. Applicant replied that he understood what he was doing and that he was competent.

*     *     *     *

11.    The plea offer was 50 years or an open plea to attempted capital murder and dismissal of the murder charge.

12.    Because of applicant's health issues, applicant believed he would die in prison and wanted to either be set free or placed on probation.

13.    There were two eyewitnesses to the incident, [applicant's]'s wife (who he shot) and the wife of the deceased (who [he also] shot). Additionally, applicant made a videotaped statement admitting to shooting both his wife and the deceased.

14.    Counsel advised applicant that the chances of any acquittal were slim; that if convicted of murder he would not be eligible for probation but a jury could consider probation if convicted of attempted capital murder. Applicant was further advised that the granting of probation was unlikely. Applicant was also advised of the possibility of deferred adjudication from the judge which they further advised was unlikely.

15.    Applicant chose an open plea to attempted capital murder.

16.    Counsel was of the opinion that applicant made that choice because it was his best chance at probation even though unlikely.

*     *     *     *

14

20.    Applicant entered his plea of guilty knowingly and voluntarily.

21.    Applicant was competent to enter his plea.

22.    Applicant received the effective assistance of counsel.

*Ex parte Splawn*, pp. 36–39.  The state trial court also made the following relevant conclusions of law:

7.    Applicant's plea was entered knowingly and voluntarily.

8.    Trial counsel's performance did not fall below the prevailing professional norms.

*Id.*, p. 39.

The state court record further shows that, during the plea hearing, petitioner himself stated in open court and on the record that he was entering his plea freely and voluntarily and that no one was forcing him to plead guilty.  R. R. 2, 168.  It is well established that "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal[.]"  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner here presents nothing more than his bald disagreement with the state court's findings, conclusions, and decisions.  This is insufficient to meet his burden of proof under AEDPA or to preclude the granting of summary judgment against him.  In particular, petitioner provides no competent evidentiary support for his conclusory assertion that trial counsel "promised" he would receive probation if he pleaded guilty.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

B.    Involuntary Plea

Petitioner claims that counsel should not have allowed him to plead guilty because counsel knew that he was mentally ill and taking "psych medications that was said to impair his judgment." (Docket Entry No. 1-1, p. 10.)

In responding to this claim on state collateral review, trial counsel testified by affidavit as follows:

> I engaged the services of two psychologists, Dr. [S] and Dr. [B], to evaluate the mental health of Plato Splawn. It was obvious to me that he was competent—he always indicated a clear understanding of the charges against him, the process, the roles of his lawyer, the judge, and the jury. He discussed rationally the events related to the shooting. But there did appear to be some mental health issues. He expressed great concern of issues related to his divorce situation and to the current activities of his wife. He was very upset that his wife had become pregnant from a new relationship while the charges were pending.
>
> Neither [Dr. B nor Dr. S] felt that there was evidence to conclude that [petitioner] was incompetent to stand trial or that he was insane at the time of the offense.

*Id.*, p. 8.

In rejecting petitioner's claim, the state trial court made the following relevant findings of fact:

> 7.  Two psychologists, Dr. [S] and Dr. [B] were appointed at the request of applicant's attorney to assess applicant's competency and any other mental health issues that might be pertinent.
>
> 8.  Each attorney was of the opinion that it was "obvious" to each of them that applicant was competent, that he had a clear understanding of the charge against him, the process, the roles of his attorney, the judge, the jury and was able to rationally discuss the events related to the incident.
>
> 9.  Neither Dr. [S] nor Dr. [B] felt that there was any evidence to conclude that applicant was incompetent to stand trial or that he was insane at the time of the offense.
>
> \* \* \* \*
>
> 20.  Applicant entered his plea of guilty knowingly and voluntarily.
>
> 21.  Applicant was competent to enter his plea.
>
> 22.  Applicant received the effective assistance of counsel.

*Ex parte Splawn*, p. 37–39. The state trial court also made the following relevant conclusions of law:

> 7.  Applicant's plea was entered knowingly and voluntarily.
>
> 8.  Trial counsel's performance did not fall below the prevailing professional norms.

*Id.*, p. 39. The Texas Court of Criminal Appeals expressly relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's bare assertions that he was mentally ill and under the influence of psychiatric medications at the time of the plea are unsupported in the record. The state court record clearly shows that petitioner was examined by mental health experts prior to the plea hearing, and that the experts found petitioner competent to stand trial. Although there was testimony at the punishment hearing that petitioner had been prescribed anti-depressants and/or anti-anxiety medications prior to, or around the time of, the criminal offense, the expert witnesses did not testify that the medications rendered him unable to make decisions or that they incapacitated his judgment in any manner.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

C.     Right to Appeal

Petitioner next states that counsel failed to inform him that a guilty plea would waive his right to appeal the sentence and conviction.

In responding to this claim, trial counsel submitted an affidavit to the state trial court, wherein he testified that, "Prior to the entry of the plea, I advised [petitioner] orally and in writing of his limited right of appeal due to his guilty plea." *Ex parte Splawn*, p. 3. In support, trial counsel attached a copy of the Trial Court's Certification of Defendant's Right

of Appeal, as executed by petitioner, showing that petitioner was advised that he had no right to appeal the guilty plea, but that he retained the right to appeal the sentence. *Id.*, p. 15. In a second affidavit, trial counsel testified that, "Upon further reflection, it is my recollection that prior to the entry of his plea of guilty, I advised [petitioner] orally of his limited right of appeal. It is my recollection that the written certification of appeal was signed by him after sentencing." *Id.*, p. 24.

In rejecting petitioner's claim, the state trial court made the following relevant findings of fact:

> 18.  Prior to entering his open plea of guilty counsel for applicant orally advised applicant of his limited right of appeal.
>
> 19.  Applicant was appropriately advised of the options available to [him] and the consequences that might follow.
>
> 20.  Applicant entered his plea of guilty knowingly and voluntarily.
>
> 21.  Applicant was competent to enter his plea.
>
> 22.  Applicant received the effective assistance of counsel.

*Id.*, pp. 38–39. The state trial court also made the following relevant conclusions of law:

> 7.  Applicant's plea was entered knowingly and voluntarily.
>
> 8.  Trial counsel's performance did not fall below the prevailing professional norms.

*Id.*, p. 39. The Texas Court of Criminal Appeals expressly relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner's disagreement with counsel's affidavit testimony and the trial court's findings and conclusions is insufficient to preclude the granting of summary judgment or to warrant habeas relief. Petitioner presents no competent evidence in support of his claim.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

D.    Indictment

Petitioner asserts that counsel was ineffective in failing to challenge the indictment. According to petitioner, the indictment was "duplioious" because it charged petitioner with murder and violated the plea agreement.[1]

By pleading guilty, petitioner waived all ineffective assistance claims except for claims that counsel's performance led to an involuntary and unknowing guilty plea. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). The instant claim raised by petitioner concerns counsel's actions before entry of the plea, and does not set forth conduct that led to an involuntary and unknowing plea. Consequently, petitioner's claim was waived by his guilty plea.

---

[1] The Court believes petitioner intended to argue that the indictment was "duplicative" or "duplicitous."

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

E.     Breach of Plea Agreement

Petitioner further contends that, because the indictment charged him with murder, the State violated the plea agreement by including the murder charge in petitioner's jury charge at punishment. Petitioner complains that counsel was ineffective in failing to raise this violation at the punishment hearing.

The state trial court made the following relevant findings of fact on collateral review:

1.     On February 21, 2012, applicant was indicted in this cause for the first degree felony offense of attempted capital murder. Applicant was also indicted in Cause number 25,788 with the first degree felony offense of murder.

2.     On January 21, 2014, a jury panel was called. Prior to selection and out of the presence of the panel the court was advised that applicant wished to accept the plea bargain made by the State of Texas. The plea agreement was for applicant to enter a plea of guilty to the indictment charging applicant with attempted capital murder without a punishment recommendation and for the jury to assess punishment. *In exchange, the State would dismiss the murder indictment but the circumstances surrounding the murder alleged in cause number 25,788 would be considered by the jury in punishment. Applicant acknowledged to the court that that was his understanding.*

3.  A jury and alternate were selected and applicant entered his plea of guilty to the first degree felony of attempted capital murder. The punishment hearing was held and afterwards the jury returned a sentence of life in the Texas Department of Criminal Justice-Institutional Division. [Applicant] filed a notice of appeal, trial counsel was allowed to withdraw and an attorney was appointed for applicant to prosecute the appeal. The Tenth Court of Appeals affirmed the conviction.

\*   \*   \*   \*

22.  Applicant received the effective assistance of counsel.

*Ex parte Splawn*, pp. 35–36, 39 (emphasis added). The state trial court further concluded that, "Trial counsel's performance did not fall below the prevailing professional norms." *Id.*, p. 39. The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner pleaded guilty to the allegations set forth in his indictment, as follows:

[O]n or about the 6th day of December, 2011, and anterior to the presentment of this indictment, in the County and State aforesaid PLATO AUGUST SPLAWN, JR. did then and there, with specific intent to commit the offense of capital murder of Sandra Splawn, do an act, to-wit: cause the death of Edwin Garcia and then shoot Sandra Splawn with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended[.]

(Docket Entry No. 11-3, p. 5, original capitalizations.)

The subsequent jury charge at punishment read, in relevant part, as follows:

After finding the defendant, PLATO AUGUST SPLAWN, JR., guilty of the offense of ATTEMPTED CAPITAL MURDER you must determine the sentence to be imposed on the defendant.

The Defendant has entered a plea of guilty. He has persisted in entering his plea of guilty, notwithstanding that the court, as required by law, has admonished him of the consequences. It plainly appearing to the court that the defendant is mentally competent, and that he makes this plea freely and voluntarily, his plea is received by the court. *You are instructed to find the defendant guilty as charged in the indictment* and assess his punishment as herein instructed.

(Docket Entry No. 11-3, pp. 46, original capitalizations.)

During deliberations, the jury sent out the following question to the trial court:

Are we deciding sentence based on the murder of Edwin and the attempted murder of Sandra. Or based on the attempted murder of Sandra[.]

*Id.*, p. 57.

The trial court responded with the following answer to the jurors:

You have been instructed to find the defendant guilty as charged in the indictment – attempted capital murder to-wit: causing the death of Edwin Garcia and then shooting Sandra Splawn with a firearm, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended – capital murder.

*Id.*, p. 58.

The jury returned the following verdict:

We, the jury, having found the defendant, PLATO AUGUST SPLAWN, JR., guilty of the offense of ATTEMPTED CAPITAL MURDER, assess his punishment at [] confinement by the Texas Department of Criminal Justice for a term of Life [] and no fine.

*Id.*, p. 55 (original capitalizations).

No breach of the plea agreement is shown. Petitioner pleaded guilty to the indictment,

and the jury charge, as well as the trial court's answer to the jury's written question, tracked

the indictment. The jury was not charged with finding petitioner guilty of an independent criminal charge for first degree felony murder of Edwin Garcia. Petitioner fails to show that, had counsel raised the objection set forth by petitioner, the objection would have been granted. Moreover, petitioner fails to show that, but for counsel's failure to object, there is a reasonable probability that the result of the punishment trial would have been different. Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

F.    Competency Hearing

Petitioner argues that counsel was ineffective in failing to request a competency hearing. He claims that he was mentally ill and under psychiatric medications at the time of the plea hearing, resulting in his inability to enter a knowing and voluntary plea of guilty. Petitioner contends that, had counsel requested a competency hearing, it would have been granted and he would have been found incompetent.

In responding to this claim on state collateral review, trial counsel submitted an affidavit wherein he testified, in relevant part, as follows:

I engaged the services of two psychologists, Dr. [S] and Dr. [B], to evaluate the mental health of Plato Splawn. It was obvious to me that he was competent—he always indicated a clear understanding of the charges against him, the process, the roles of his lawyer, the judge, and the jury. He discussed rationally the events related to the shooting. But there did appear to be some mental health issues. He expressed great concern of issues related to his divorce situation and to the current activities of his wife. He was very upset that his wife had become pregnant from a new relationship while the charges were pending.

Neither [Dr. B nor Dr. S] felt that there was evidence to conclude that [petitioner] was incompetent to stand trial or that he was insane at the time of the offense.

In conclusion, I was not aware of any evidence that would have justified a competency hearing.

*Id.*, p. 8.

In rejecting petitioner's claim, the state trial court made the following relevant findings of fact:

7. Two psychologists, Dr. [S] and Dr. [B] were appointed at the request of applicant's attorney to assess applicant's competency and any other mental health issues that might be pertinent.

8. Each attorney was of the opinion that it was "obvious" to each of them that applicant was competent, that he had a clear understanding of the charge against him, the process, the roles of his attorney, the judge, the jury and was able to rationally discuss the events related to the incident.

9. Neither Dr. [S] nor Dr. [B] felt that there was any evidence to conclude that applicant was incompetent to stand trial or that he was insane at the time of the offense.

10. Neither attorney was aware of any evidence that would have justified a competency hearing.

\*    \*    \*    \*

20.   Applicant entered his plea of guilty knowingly and voluntarily.

21.   Applicant was competent to enter his plea.

22.   Applicant received the effective assistance of counsel.

*Ex parte Splawn*, p. 37–39. The state trial court also made the following relevant conclusions

of law:

7.   Applicant's plea was entered knowingly and voluntarily.

8.   Trial counsel's performance did not fall below the prevailing professional norms.

*Id.*, p. 39. The Texas Court of Criminal Appeals expressly relied on these findings of fact

and conclusions of law in denying habeas relief. *Id.*, at cover.

Neither petitioner nor the record reveals any probative evidence in support of

petitioner's contention that he was mentally ill, under the influence of psychiatric drugs,

incompetent at the time of the hearing, or that he would have been found incompetent at a

competency hearing. His conclusory assertions of incompetency are unsupported and

insufficient to meet his burden of proof under AEDPA or to preclude the granting of

summary judgment against him.

The state court rejected petitioner's claims of ineffective assistance and found that

trial counsel was not ineffective. Petitioner fails to show that the state court's determination

was contrary to, or involved an unreasonable application of, *Strickland* or was an

unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690–91.

Petitioner claims that appellate counsel was ineffective in failing to raise on appeal the issues raised in this federal habeas petition. Because the Court has denied relief on all of petitioner's federal habeas claims, petitioner cannot show that appellate counsel was

ineffective in raising the claims. Nor does petitioner establish that, but for appellate counsel's failure to raise the issues, there is a reasonable probability that petitioner would have prevailed on appeal. Petitioner fails to meet his burden of proof under *Strickland*, and habeas relief is unwarranted on this ground.

## VIII.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**. A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the ___3rd___ day of October, 2017.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE